| 80   117
115   668

THE STATE *ex rel.* THE ATTORNEY GENERAL v. THE MISSOURI PACIFIC RAILWAY COMPANY.

Railroad: CHANGE OF GAUGE AND ROUTE. The return to an alternative writ of mandamus requiring a railroad company to re-lay a certain portion of its road, which it had torn up and dismantled, and to re-equip, maintain and operate the same as a narrow-gauge railroad, showed in substance, that the respondent company had been formed by consolidation of several other companies; that it had acquired the portion of road in question (at the time a narrow-gauge) from one of these companies, and with it the rights, privileges and immunities secured by the charter of said company, among which was the power and right at any time to alter and change its road-bed,

or any part thereof; that because the bridges, iron and ties on the road acquired from said company had become worn out, dangerous and unfit for use, and for other considerations relating to the business of respondent and the convenience and safety of the public, respondent, in pursuance of authority derived from the public statutes of the State and a vote of more than two-thirds of its board of directors, had determined to change the whole of said road (of which the portion of road in question was but a part) to a standard gauge road; that respondent had actually made and completed this change on all of said road except the portion in question, and on that portion, for purposes of economy, convenience and safety, had caused a new route to be surveyed, and was proceeding with all reasonable dispatch to construct said changed line, and had provided the materials and equipments necessary for the operation of the same as a standard gauge road, and expected to complete the same within four months, which was as soon as it could be done with due and proper consideration of respondent's other business, economy, efficiency and the safety and convenience of the public; that respondent was in the meantime furnishing to the public all needed facilities in conveying persons and property between the termini of said dismantled line; that all of respondent's other lines were of the standard gauge, and that it was wholly impracticable successfully, efficiently and economically to maintain and operate the portion of road in question in connection with the rest as a narrow-gauge. *Held*, that this return was good on demurrer.

### *Original Mandamus.*

*Bryant, Holmes & Waddill* and *Southern & Staley* for relator.

*Thomas J. Portis* and *J. L. Smith* for respondent.

SHERWOOD, J.—The return to the alternative writ of mandamus issued by this court, is as follows:

Respondent, for answer to the amended alternative writ of mandamus filed herein, admits the incorporation of the said several railroad companies as alleged in the said amended writ; that the respondent is a consolidated railroad corporation, organized under the statutes of the State of Missouri, at the time and in the manner in the said amended writ stated; that at the time in said amended writ stated, respondent did tear up and destroy said narrow-

gauge railroad track, and did remove the rails therefrom, and did remove all rolling stock from said narrow-gauge railroad as charged in said amended writ; that respondent has, ever since the tearing up and dismantling of said narrow-gauge railroad between Kansas City and the city of Independence, wholly failed and refused, and now refuses, to restore, maintain and operate said railway between the two said last named cities as a narrow-gauge railroad as is alleged in said amended writ.

*First*, Respondent, for its further answer to the allegations in said amended writ contained, and as an excuse and justification for tearing up, dismantling and discontinuing the said narrow-gauge railroad as such, states that it acquired said narrow-gauge railroad, extending from the city of Lexington, in the county of Lafayette, through the city of Independence, to Kansas City, in the State of Missouri, a distance of forty-three miles, with all the rights, privileges and immunities secured it by its charter and the laws of the State, among which was and is the power and right to alter and change at any time, its whole road-bed or road line, or any part thereof, subject alone to the restrictions and limitations imposed by the public statutes of the State; that in pursuance of the power and authority vested in it by the public statutes of this State, and a vote of more than two-thirds of its board of directors, taken and recorded on the 9th day of November, 1881, and because the respondent, prior to the day and year last aforesaid, ascertained through its engineers and other officers, that the bridges on said narrow-gauge line of railroad across the Big Blue, Rock Creek and other streams and rivers, were decayed and rotten, insecure and unfit for use and dangerous; that the cross-ties on said railroad were decayed, rotten and worthless; that the iron rails on said road were much worn, insecure and unsafe; that the road-bed was greatly out of repair; that said narrow-gauge railroad, in its then condition, could not be operated without great danger to the public; and because further, of respondent's largely in-

creased and constantly increasing business and for the greater safety and convenience of the public in the conveyance of persons and property not only over that portion of said narrow-gauge railroad between Independence and Kansas City, a distance of ten miles, but over the entire line of said narrow-gauge railroad from the said City of Kansas to the city of Lexington, a distance of forty-three miles, the respondent determined to change the gauge of said entire line of road from a narrow-gauge to a standard gauge railroad, and that in pursuance to its said legal rights, and in obedience to said demands of its business, and for greater economy and efficiency, and greater safety and convenience of the public in the conveyance of persons and property as aforesaid, had actually made such change in said narrow-gauge railroad between Lexington and Independence before the commencement of these proceedings, and is now proceeding to make such change in the road-bed of said narrow-gauge road between Independence and Kansas City— the change of gauge in that part of said narrow-gauge road between Lexington and Independence is already complete— and also to make such change in the road-bed and road line of said part of said narrow-gauge road as will both shorten said part of said line and at the same time overcome and avoid such natural objections and obstacles as heavy grades existing on said line, and the construction of two expensive bridges over streams across which respondent already had and has constructed safe and substantial bridges, and to that end and for that purpose has caused that part of said narrow-gauge railroad between the city of Independence and Kansas City to be taken up and its road-bed and road line to be surveyed and changed, so as to substantially accomplish said results without transcending the restrictions and limitations imposed by statute in the exercise of said right as aforesaid. The map hereto attached and made a part of this answer, indicates and shows the manner and extent of said change of said narrow-gauge railroad as accurately and as precisely as the same can be done, and

is in accordance with the vote of its said board of directors.

*Second,* Respondent further answering said amended writ states that it is proceeding with all reasonable dispatch to construct said changed railroad and road line as in the manner aforesaid; that it has purchased the materials for that purpose; that the cross-ties and iron have been purchased, a part of which has been received and laid down on said line for a distance of five miles or thereabouts; that the rolling stock and equipments for the operation of said railroad as a standard gauge railroad on said changed line have been procured; that it will complete and operate the whole of said railroad within the next four months, as it is advised, which is as soon as it can be done with due and proper consideration for its other business, economy, efficiency and the safety and convenience of the public.

*Third,* Respondent for its further answer to the said amended writ, and as further justification for said action respecting said narrow-gauge railroad, avers that during all the time since its said consolidations have been made, and since the said changes of the gauge and road-bed and road line of said narrow-gauge road have been in progress, it has not failed to furnish all the facilities, accommodations and conveniences in conveying passengers and property between the said cities which have been demanded or needed by the public, and that it now is fully able and ready and willing to furnish the same, and that the public has not and cannot suffer any detriment or inconvenience by reason of the time which has been and will be required in effecting and completing said change of road-bed and line of said narrow-gauge railroad, and which respondent avers is not, and will not be unreasonable under the circumstances hereinbefore alleged.

*Fourth,* Respondent for its further answer to the said amended writ, and as further justification and excuse for its said action therein alleged, states that all its other lines of road are standard gauge, and that it is wholly impracti-

cable to maintain and operate successfully, efficiently and economically, in connection with the other parts of its continuous standard gauge roads, a link of ten miles of narrow-gauge railroad between Kansas City and Independence, and that respondent is now proceeding to change said narrow-gauge road between said city of Independence and Kansas City, in the manner hereinbefore stated, so that when the same is complete there will be substantially and practically a double track of standard gauge railroad between the said cities, which will be of great public utility.

*Fifth,* Respondent further answering denies that the law of the land, or the provisions of its charter, or the charter of any of said railroad corporations mentioned in the said amended writ, impose upon respondent the several duties and obligations with respect to the restoring, maintaining and operating said narrow-gauge railroad alleged in said writ; and respondent denies each and every allegation in said writ contained not hereinbefore specifically admitted. And now having fully answered, respondent prays to be discharged with its costs.

The sufficiency of this return is questioned by the demurrer of the relator upon the following grounds:

## I.

He demurs to the first defense of new matter contained in respondent's return to the amended alternative writ of mandamus herein, for the reasons following: 1st, It does not state facts sufficient to constitute a defense to this action. 2nd, It does not aver that the change in the road-bed and road-line of said narrow-gauge railroad therein mentioned, was made by or pursuant to a two-thirds vote of the board of directors of respondent, or of any of the railroad corporations forming either or any of said consolidated corporations. 3rd, The proposed change in said road-bed and road line are not shown nor indicated by said return and map, either separately or taken together, with sufficient definiteness or precision to enable the court to

ascertain and determine what such changes are, and whether the proposed changes are such as are authorized by law. 4th, It does not sufficiently appear that the proposed change in said road-bed and road line was made for the purpose of shortening the line or to overcome any natural objection thereto, or to secure economy in its construction. 5th, Taken in connection with the admissions in said return, it shows that nothing whatever toward restoring said destroyed and dismantled road had been done or attempted prior to the commencement of these proceedings, and that a reasonable time for restoring the same had long since elapsed.

## II.

He demurs to the second defense of new matter contained in said return for the following reasons : 1st, It does not state facts sufficient to constitute a defense to this action. 2nd, Taken in connection with the admissions contained in said return, it shows that a reasonable time for the building and restoration of said road had elapsed long before the commencement of this action. 3rd, It is immaterial that, at the time of making said return, respondent was or is now proceeding to perform the duty commanded by the amended alternative writ. The return ought to show either actual obedience to the mandate of that writ or else that, within a reasonable time after said road was torn up and dismantled, respondent had commenced the restoration and re-building of the same, had continuously prosecuted the work with all reasonable diligence and dispatch, and a reasonable time to restore and re-build the same had not elapsed.

## III.

He demurs to the third defense of new matter contained in said return for the following reasons : 1st, It does not state facts sufficient to constitute a defense to this action. 2nd, It does not show that all the facilities, accommodations and conveniences in conveying passengers and

property between the cities of Independence and Kansas City which have been demanded or needed by the public have been furnished by the respondent in any manner whatever. 3rd, It does not show that any such facilities, accommodations or conveniences whatever have been furnished along the line of said narrow-gauge railroad in any manner whatever. 4th, It is immaterial that equal conveniences have been or may be furnished for such purposes by the respondent over some other line of railway.

## IV.

He demurs to the fourth defense of new matter in said return contained for the following reasons: 1st, It does not state facts sufficient to constitute a defense to this action. 2nd, The mandate of the amended writ does not require the building, maintaining or operating a narrow-gauge railroad between Kansas City and Independence. 3rd, Any inconvenience to the respondent performing its public corporate duties is immaterial. 4th, It is the duty of defendant to maintain and operate two separate lines of railroad between the cities of Kansas City and Independence, and the building, maintaining and operating of a double track along either of said lines of railway without, at the same time, continuing to maintain and operate the other of said lines of railway, does not constitute a compliance with said duty. 5th, It does not appear that the doing of any of the things therein mentioned was begun or being proceeded with before the commencement of this action, and taken in connection with the admissions and other allegations in said return contained, it appears that a reasonable time for the doing and completion of said things had elapsed long before the commencement of this action.

The statements of the return are admitted by the demurrer to be true. We are all of opinion that such statements, the truth of which are thus admitted, constitute a sufficient return to the alternative writ. As a matter of

course, it must, of necessity, take a considerable time in which to make the change from a narrow to a broad gauge, and to re-build the bridges across the various streams, so as to subserve the public interests, safety and welfare. Full authority for making these changes is set forth in the return and admitted by the demurrer. What is reasonable time, or a sufficient time, in which to perform the work now in progress, must depend upon the circumstances of the case, of which we are not sufficiently informed to judge. If, as a matter of fact, the respondent is not in the exercise of such diligence as is requisite in the prosecution of the work of making the change, this is a point which can be appropriately raised by a traverse of the allegation of the return.

The premises considered, we adjudge the return sufficient in law, and the relator, if so advised, may plead further. All concur.