THE TUDOR IRON WORKS, Appellant, v. A. C. HITT, Respondent.

Kansas City Court of Appeals, April 4 and 25, 1892.

1. **Fixtures:** ERECTION ON REALTY WITH LICENSE. When one places an erection upon the land of another with his permission, with the intention that it is to be held as the property of the builder, it continues personal property, and the owner may remove it when the license is withdrawn.

2. ————: COMMON LAW: AGREEMENT. The rules of the common law relating to buildings and structures erected by the lessee are liable to be modified by the agreement of the parties on the subject, and so far as such agreement extends the question is no longer what is the common law, but what have the parties agreed.

3. ———— : TIES AND IRON RAILS. Ties and rails laid down on a road-bed and fastened so that cars can pass over them become annexed to the realty, and are not personal property unless made so under an expressed or implied agreement for that purpose.

4. ————:————: SEVERANCE: REPLEVIN. If such ties and rails by any means become severed from the realty, they become the personal property of the land-owner, and are the proper subject of replevin.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Geo. Robertson,* for appellant.

(1) The only question in the case is whether the railroad ties, under the circumstances, are personal property or real estate. If personal property, then plaintiff was entitled to a verdict for possession, and the court erred in refusing the instructions asked by it, and, if real estate, the case should have been dismissed. The defendant consented to the placing of the track upon his land, and as between him and the railroad company, or one claiming under it, it remained per-

sonal property. "A building or other fixtures, which is ordinarily a part of the realty, is held to be personal property, when placed upon the land of another by contract or by consent of the owner." *Hines v. Amient,* 43 Mo. 298; *Neiswanger v. Squier,* 73 Mo. 198; Tiedeman on Real Property, sec. 2. "Fixtures are those things which, personal in their nature, become realty by reason of their annexation to the soil, such annexation being made by some one having an interest in the soil. They are removable or not, according to the circumstances of each case." Tiedeman on Real Property, sec. 3. (2) In this case there was never any contract of purchase. Defendant had simply agreed that Garland might buy the land if he, Garland, so chose within a certain time. Even had there been a contract of purchase with the railroad company the defendant could not have retained the rails and ties. *Waters v. Reuber,* 16 Neb. 99; *Little v. Wilford,* 31 Minn. 173; *Rush Co. v. Stubbs,* 25 Kan. 322. (3) The mortgage was given upon the "cross-ties, iron and roadbed, as it was then or might thereafter be constructed." The work of laying the ties and rails into the road was not done until after the mortgage was made and recorded. Thus showing that the mortgage was given upon the ties and iron while it was personal property. Therefore, plaintiff's title to them was acquired while they were the personal property of the railroad company, and defendant could acquire no title as against this mortgage. *Earea v. Estes,* 10 Kan. 314; *Tifft v. Horton,* 53 N. Y. 537; *Ford v. Cobb,* 20 N. Y. 343; *Brand v. McMahon,* Am. Dig. for 1891, p. 1893. (4) Under the conditions of the bonds at the time this suit was begun two installments of interest were due, being in amount $600. The condition being broken, the beneficiary was entitled to the possession of the mortgaged property. Cobbey on Replevin, sec. 176; *Barnett v.*

*Timberlake,* 57 Mo. 499; *Sheble v. Curdt,* 56 Mo. 437; *Jackson v. Cunningham,* 28 Mo. App. 354. (5) The first question was to determine if the property be real or personal estate. If real estate, the cause should have been dismissed. Cobbey on Replevin, sec. 371; *Elliott v. Block,* 45 Mo. 373; *Morrison v. Yancey,* 23 Mo. App. 670.

*W. H. Kennan* and *F. R. Jesse,* for respondent.

(1) The evidence in this case clearly shows that the physical condition of the property in dispute in this case was such as to make it a part of the realty, and as between the parties to this suit the rule of the common law, *"Quicquid plantatur solo, solo cedit,"* applies. And for this reason the sheriff's execution and sale thereunder conveyed no title to the property to the plaintiff. *State to use v. Marshall & Co.,* 4 Mo. App. 29; *Donnewald v. Real-Estate Co.,* 44 Mo. App. 350; *Pemberton v. King,* 2 Dev. L. (N. C.) 376. (2) The evidence in this case showed that the street railroad was put down on the land of defendant by the Mexico Street Railroad Company while said company was in possession under a contract of purchase, and, therefore, became a part of the realty. *Railroad v. Crawford,* 68 Mo. 80; *Kingsley v. McFarland,* 82 Me. 231. (3) The evidence clearly shows that Mexico Street Railroad Company put the said street railway on the land of defendant with the intention of making it a permanent annexation to the realty, and, therefore, become a part of the land. *Rogers v. Crow,* 40 Mo. 91. (4) The judgment is in form as required by law, and is the only one that can be given in cases of this kind. R. S. 1889, secs. 7489, 7490; *Chapman v. Kerr,* 80 Mo. 158. (5) The mortgage introduced by plaintiff can have no bearing on this case.

SMITH, P. J.—The plaintiff, a business and manufacturing corporation, brought its action of replevin against defendant to recover a certain number of cross ties and iron rails. It appears from the evidence that the defendant gave one Garland, who was president of the Mexico Street Railroad Company, a sixty-day option to purchase a certain tract of land. Before the expiration of this option the Mexico Railroad Company applied to defendant for permission to put its railroad down over the land it embraced. Defendant refused to permit it to be done, unless the railroad company would agree to buy the land. The manager of the company then said to defendants, "they were going to take the ground, that they would not come and build up his property and run the road through without they were going to take the ground. He said they did not have the money to pay down as they had been at a great deal of expense, but there was no doubt that they would take the ground." The evidence is uncontradicted that the defendant would not have granted the railroad company the license to lay its track down on his land had he not been induced to do so by the assurances of its manager that the company would buy the land under the option he had given to its president. Under this permission the roadway was located, and the ties and iron rails were placed thereon. The iron rails were firmly spiked down to the ties, and dirt placed between them so as to make a track for the horses which were to pull the cars over the line. The road was operated a few days, when its further operation was abandoned. The railroad company did not take the defendant's land under the option.

The plaintiff had sold the street railroad company the iron rails used by it in constructing its road. The plaintiff afterwards obtained judgment against said

railroad company for the purchase price of the iron rails, and caused the ties and iron rails to be levied upon and sold by the sheriff under an execution issued on said judgment, and at which sale plaintiff became the purchaser. It seems that the street railroad purchased all the iron rails used in laying the track of the plaintiff, and executed to it a deed of trust thereon with other property to secure the purchase price of the iron rails so purchased. But as this deed of trust is only mentioned in the abstract we are not advised as to its provisions. The finding and judgment of the court was for defendant. The plaintiff has appealed.

The only question here is whether the ties and iron rails in question were so annexed to the defendant's land by the railroad company as to become a part thereof and by that means lost their personal nature. It is conceded that the defendant gave the railroad company the privilege to enter upon his land and to locate, construct and operate its railroad over the same. It was a long time ago declared in this state that when one builds a house or fence or places any other erection upon the land of another with his permission, with the intention that it be held as the property of the·builder, it continues personal property, and the owner may remove it when the license is withdrawn. *Hines v. Amient*, 43 Mo. 298; *Matson v. Calhoun*, 44 Mo. 368; *Lowenberg v. Bernd*, 47 Mo. 297. In 1 Washburn on Real Property, 4, it is said, "If a man by permission of another erects a house upon the other's land, it will, if the builder have not estate in the same, be the personal property of the builder, *if such be the agreement with the land-owner*." The rule thus stated by this author is supported by the ruling in *Hinkly v. Black*, 70 Me. 473, and *Lapham v. Norton*, 71 Me. 85; *Dunn v. Dunn*, 38 N. H. 429, and *Korbe v. Barbone*, 130 Mass. 255, and perhaps in other cases. The rules of the

common law relating to the rights of lessor and lessee in buildings and other structures erected by the lessee upon the leased property, and in such things as are annexed thereto, are liable to be modified by the agreement of the parties on the subject, and so far as such agreement extends the question is no longer what is the common law, but what have the parties agreed. *Dunn v. Dunn,* 38 N. H. 429; *Foley v. Addenbroke,* 13 M. & W. 174.

In this case there is nothing in the evidence tending to show that there was any agreement made by the railroad company with the defendant that the ties and rails used in the construction of its track over defendant's land, under the license given by defendant, should thereafter be the personal property of the railroad company. But the concurrent intention or agreement of the parties for the separate ownership and right of removal may be implied from the circumstances and the conduct of the parties. *Korbe v. Barbone,* 130 Mass. 255; *First Parish, etc., v. Kones,* 8 Cush. 184. The ties and rails placed on the roadbed of said railroad were not personal property (*Hart v. Railroad,* 7 Mo. App. 446), unless made so under an expressed or implied agreement for that purpose, and there was not, as we have seen, any such expressed agreement proved. It is not perceived that it can be fairly implied from the circumstances and the conduct of the railroad company and the defendant, as is disclosed by the evidence, that there was an agreement or concurrent intention that the ties and iron rails which were used in the construction of the railroad track were to be held by the railroad as personal property. The conditions under which the defendant was induced to grant the railroad the license under which it entered and built its road over his land unmistakably indicates that the road was to be permanent. The fact that the company had

taken an option on defendant's land, coupled with the assurance by the manager of the road that if the company did not intend to take the land they would not put the road there, repels any implication that it was the purpose of the company that the track and the ties and rails entering into it were not to be permanently annexed to defendant's land. The further fact that the railroad company had laid out an addition to the city of Mexico, and were extending its railroad to the addition for the purpose of inducing the purchase of lots in such addition, shows that it was intended that the road was to be permanent. It is not to be supposed that the company intended to build its railroad to the addition it had laid out, offer and sell its lots therein to purchasers who would buy on the faith that the road would be permanent, and to then abandon the operation of the road; for that would be a fraud. We must indulge every inference in favor of honesty and fair dealing. The mere fact that the ties and iron were employed in the construction of this railroad raises the inference that the road was intended to be a permanent annexation to the land.

Again, if the road was constructed on the defendant's land under an agreement to purchase, of which there is some evidence, then the road and materials entering into its construction became a part of the land, so that in no view which we are able to take of the case can we find that there was any mutual intention or agreement of the parties that the ties and iron were to be personal property, and that the railroad company should have the right to remove the same. We see no reason why the ordinary rule, that where ties and rails laid down on a roadbed and fastened so that cars can pass over them become annexed to the realty in the absence of an agreement, changing the ordinary rule of law, should not apply in this case. Tyler on Fixtures,

144; *Weisslon v. Ins. Co.*, 4 Metc. 306; *Pierce v. God-dard*, 22 Pick. 306; *Richardson v. Copeland*, 6 Gray, 536.

If the ties and rails in controversy became severed by the act of the sheriff or the railroad company, they became personal property of defendant, the owner of the land, and were the proper subjects of replevin, though they had been part of the land and sold by the sheriff. Tyler on Fixtures, 70. So that it follows that the judgment of the circuit court finding the value of the ties and rails was not erroneous.

The deed of trust is not before us, and if it wa ' we do not think that it would alter the rules of law which we have applied in the solution of the question presented. It is not contended that the defendant was a party thereto, and is in any way estopped by its provision.

The judgment is affirmed. All concur.