MISSOURI PACIFIC RAILWAY COMPANY Appellant, v. E. S. BRADBURY et al., Respondents.

Kansas City Court of Appeals, March 7, 1904.

1. **EASEMENTS: Abandonment: Railroad Right of Way: Intention.** To constitute an abandonment of an easement, action must be shown of such unequivocal nature as to indicate a clear intention to abandon and an abandonment is more readily inferred where the easement was for public purposes.

2. ———: ———: ———: ———. On the evidence it is held that the plaintiff abandoned its right-of-way at a point indicated and the same reverted to the owner of the servient estate.

3. ———: ———: **Fixtures: Railroad Tracks.** Where a railroad abandons its right-of-way the railroad track thereon goes with it and becomes the property of the servient estate. Authorities considered.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

(1) The track in controversy had not been abandoned by the Missouri Pacific Railway Company. The rule is that "the mere non-user of this piece of road, in the absence of adverse possession by the servient owner, or other acts of such unequivocal nature on the part of the owners of the railroad, as to evince a clear intention to abandon the easement, would not work an extinguishment of the right-of-way. Railway v. Railway, 129 Mo. 70; Investment Co. v. Railway, 108 Mo. 50. (2) But even if we should concede that the Missouri Pacific

Railway Company abandoned that part of the road from which defendants were removing the rails in controversy, still that fact did not vest in the defendants, or in McElroy and Baird, under whom defendants claim any title to said rails. The rails were not a part of the realty, and even though the right-of-way might revert to the owner of the fee because of non-user or abandonment by the railroad company, the rails would not pass to the landowner, but would remain the property of the railroad company. Wagner v. Railroad, 22 Ohio St. 563; Railway v. Nyce, 61 Kan. 394; Railroad v. Canton Co., 3 Md. 347; Railroad v. Morgan, 42 Kan. 23.

*B. P. Finley* for respondent.

(1) Upon the abandonment by the railway company of the land which had constituted the right-of-way, both the title to the land and the rails thereon was vested in Messrs. Baird and McElroy, and they had a right to sell them to the defendants. The effect of the abandonment of the right-of-way is that the company loses all its rights thereto, and the original owners may assume possession. Hastings v. Railroad, 38 Ia. 316; Railroad v. Railroad, 86 N. Y. 107; Railroad v. Railroad, 63 Tex. 529; Railroad v. Railroad, 36 Conn. 196; Fernow v. Railroad, 75 Ia. 526. (2) Abandonment divests title as fully as a conveyance. McGoon v. Ankeny, 11 Ill. 558; Gluckauf v. Reed, 22 Cal. 468. And it operates from the time of the act of abandonment. Davis v. Butler, 6 Cal. 510. (3) The rails were fixtures upon the premises and passed with the realty. Hunt v. Railroad, 76 Mo. 115; 3 Wait's Actions and Defenses, p. 379, sec. 9; Jones' Real Property in Conveyancing, sec. 1729, and note 1; Van Keuren v. Railroad, 38 N. J. L. 165; Porter v. Steel Co., 122 U. S. 283; Railroad v. Cowdrey, 11 Wall. 480; Dillon v. Barnard, 21 Wall. 440; Fostick v. Shaw, 99 U. S. 235; Wade v. Railroad, 149 U. S. 327; Denman v. Railroad, 26 S. W. 304. (4) The cases cited

by the appellant are by no means in point. They are all similar to the case cited by it, to-wit: Railroad v. Nyce, 61 Kan. 394.

SMITH, P. J.—This is a proceeding for an injunction. The case as disclosed by the record is about this:

It is in effect conceded that, in the northwest quarter of section 31, township 50, range 32, of Jackson county, beginning at a point about 2,100 feet west of the point where the Santa Fe railroad crosses the Missouri Pacific tracks, in section 31, township 50, range 32, between Kansas City and Independence, H. L. McElroy owns about four acres of land south of the Missouri Pacific track, and the estate of F. J. Baird owns a little more than nine acres of land adjoining the McElroy land on the west, and also south of the Missouri Pacific main line, through both of which tracts of land runs what was once the right-of-way of the railroad commonly known as the old narrow gauge, from Kansas City to Lexington.

By reference to the following plat it will be seen that the Missouri Pacific Railway curves from the north southward and eastward, and that the old narrow gauge right-of-way ran east and west, and, at the point marked ''A'' on said plat (it being 1,300 feet east of the east line of the McElroy land), the narrow gauge right-of-way ran into the Missouri Pacific right-of-way, and was, thereafter, within said Missouri Pacific right-of-way:

Railroad v. Bradbury.

E

Santa Fe Crossing.

800 ft.

A

North fence Mo. Pac. Ry.

N

Right-of-way Mo. Pac. Ry.

South fence Mo. Pac. Ry.

1,300 ft.

McElroy Ground.
350 ft.

S

Baird Land.
858.5 ft.

(Abandoned) Narrow Gauge Track.

W

In 1882, the plaintiff having acquired this narrow gauge road, changed it from a narrow to a broad gauge railroad, and said narrow gauge ran east and west and, at the point indicated, was for a short time the main line of the Missouri Pacific. Thereafter, in 1884, the Missouri Pacific constructed the present main line between Independence and Kansas City, and built its tracks in a northwesterly direction from the point at which the Santa Fe crosses the Missouri Pacific tracks, as indicated on said plat, and then abandoned and, thereafter, never used the old narrow gauge tracks from the point "A" westward for any purpose whatsoever. 80 Mo. 119, et seq. That after the year 1884, what was once the narrow gauge track, from the point "A" westward was not, in any sense, used by the Missouri Pacific Railway Company; that the entire right-of-way, from said point "A" west, was covered with trees and brush, and that, between the rails, there were, at the time of the institution of this suit, growing trees seventeen inches in diameter, and all of the witnesses for the defendants testified that large trees were growing between the rails, so that a car could not pass over the track. The evidence tended to prove that the ties were so rotten that they could not hold spikes, and the rails in many places disconnected and scattered over the ground, and this applies to all that portion of the track east of the land of McElroy and Baird to the point "A," where this track ran into the Missouri Pacific right-of-way, as shown upon the plat above mentioned. In 1902 the defendants, Bradbury and Howell, purchased from Messrs. McElroy and Baird the rails which were lying upon the ground where the right-of-way had once been, and which it is claimed was then together with the rails thereon, by operation of law, and by the abandonment of the railroad company, the property of said McElroy and Baird, and, while removing the rails which they had so purchased, were stopped by the employees of the Missouri Pacific Railway Co., and this proceeding was begun for

the purpose of enjoining them from removing said rails.

The trial court on motion of the defendants dissolved the injunction and from that decree the plaintiff appealed.

The Narrow Gauge Railway Company acquired the right-of-way—the easement—over the lands of which Baird and McElroy were the owners in fee; and by the consolidation, the plaintiff succeeded to the rights of the former road in respect to its right-of-way over said land. It seems to be conceded that the plaintiff has not for many years used that part of the right-of-way extending over the lands referred to. There is some conflict in the testimony of the witnesses as to just when the non-user began; the greater preponderance of it, however, sustains the contention that it—the non-user—began in 1884. While mere non-user will not amount to an abandonment, it is well settled that an easement acquired by grant or its equivalent, may be lost by abandonment.

To constitute an abandonment of an easement acquired by grant, acts must be shown of such unequivocal nature as to indicate a clear intention to abandon. An abandonment will be more readily inferred where the easement was granted for public purposes than where created for private use. Roanoke v. Railway, 108 Mo. l. c. 64. The plaintiff ceased to use that part of its right-of-way extending over the lands of Baird and McElroy something like eighteen years ago. No cars were or could be run over the track along there. Trees had grown up on it; the ties to which the rails were fastened had been allowed to decay and were not replaced with new ones. The record of the proceedings in the mandamus case in 80 Mo., already referred to, conclusively establishes the abandonment. Nothing more is needed. Indeed, we do not understand that it is or can be contended that there has been no abandonment.

The question now is, whether or not the iron rails in controversy, laid as they were upon the road-bed and fastened there so that engines and cars could pass over

them, become thereby so annexed to the land as to be a part of it and consequently ceased to be personal property? In Hart v. Railway, 7 Mo. App. 446, it was held that, the "road-bed, rails and right-of-way belonging to a railway company were in no sense personal property." And this ruling was adopted and followed in Tudor Iron Works v. Hitt, 49 Mo. App. 477, and in Harris v. Hitt, 58 Mo. App. 459. See also Hunt v. Railway, 76 Mo. 115. And elsewhere it has been held that rails when laid upon the road-bed and fastened there so that engines and cars can pass over them become annexed to the land and cease to be personal property. Tyler on Fixtures, 144, and cases there cited.

The plaintiff or its predecessors acquired the right-of-way to build a railway and after such acquisition it constructed a roadbed along such right-of-way, laid down ties thereon and fastened rails thereto, in such a way that engines and cars could and did pass over the same, after which it abandoned the use of said track—constructed another, in fact, over which it has ever since run its engines and cars. By the abandonment the easement was extinguished and the land became discharged of the burden—the right-of-way strip reverted to the owner of the servient estate. If the rails annexed to the roadbed on the right-of-way were not in any sense personal property but were a part of the realty, then, when the abandonment took place, it is impossible to discover why such rails did not as a part of the realty go with it and become as much the property of the owner of the servient estate as the road-bed itself.

The case of Wagner v. Railway, 22 Ohio St. 563, cited and relied on by the plaintiff, holds that the piers built by a railway company on lands over which it had acquired the right-of-way for its road, though firmly imbedded in the earth, do not become the property of the owner of the lands as part of the realty. And on the purpose of completing the railroad being abandoned, the company may remove such structures as personal

property. And in case of such abandonment, the fact that the landowner has been allowed to take possession of the land embraced in the right-of-way and hold it for a term of years less than is required to extinguish the easement, does not of itself imply a relinquishment on the part of the railroad company of its right to enter and remove the piers. If the piers were imbedded in the earth, as already stated, then, under the rulings of the appellate courts of this State previously referred to, they were a part of the realty and on the abandonment of the easement they reverted to the owner of the servient estate. The Ohio rule therefore can have no application in this State.

It would be an anomaly in our law if a railway company, after the abandonment of its right-of-way, and the bridge piers, ties, rails, etc., thereon, were permitted at any time within the ten years required to extinguish the easement (Boyce v. Railway, 168 Mo. 583), to enter and remove such piers, etc., the same being part of the realty. We must think the right to remove any part of the bridge piers, rails, etc., terminates with the consummation of the abandonment and that the right to re-enter and remove does not survive such abandonment. This seems to be a logical corollary resulting from the rule that the road-bed, ties, etc., of a railroad company are in no sense personal property, but part of the realty. The common law rule is that, "all fixtures for the time being are a part of the freehold and if any right to remove them exist in the person erecting them this must be exercised during the term of the tenant, and if this be not done the right to remove is lost," etc. Taylor on Landlord and Tenant, sec. 555. Fixtures go at the expiration of the term to the landlord unless the tenant during the term has exercised the right to remove. Walsh v. Sichler, 20 Mo. App. l. c. 380, and cases there cited.

So it appears from all the analogies of the law that the plaintiff railway company's right to remove the iron

rails which were attached to ties imbedded in the surface of the earth on the right-of-way was extinguished when the abandonment was consummated.    Davis v. Butler, 6 Cal. 510.    The abandonment had the operative effect to divest the title as a conveyance.    McGoon v. Ankeny, 11 Ill. 558; Gluckauf v. Reed, 22 Cal. 468.    The following cases are cited to sustain the contention that the effect of the abandonment of the right-of-way was that the plaintiff thereby lost all its rights thereto and that the landowners could assume possession.    Hastings v. Railway, 38 Ia. 316; Railway v. Railway, 86 N. Y. 107; Railway v. Railway, 63 Tex. 529; Railway v. Railway, 36 Conn. 196; Fernow v. Railway, 75 Ia. 526.

The following authorities cited by defendants lend countenance to his contention that the rails were fixtures upon the premises and at the time of the abandonment passed to the owners of the land.    3 Waits' Actions and Defenses, p. 379, sec. 9; Jones on Real Prop. in Conv., sec. 1729, and note 1; Van Keuren v. Railway, 38 N. J. L. 165; Porter v. Steel Co., 122 U. S. 283; Railway v. Cowdrey, 11 Wall. 459-480; Dillon v. Barnard, 21 Wall. 430-440; Fostick v. Shaw, 99 U. S. 235; Wade v. Railway, 149 U. S. 327; Denman v. Railway, 26 S. W. 304.

Accordingly, it seems to us that the sale of the rails by Baird and McElroy to the defendants Bradbury and Howell passed the title to them, and that the decree of the trial court in dissolving the injunction and dismissing the petition should be affirmed.    All concur.