HUNT v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Plaintiff in Error.*

**Fixtures**: BUILDING ERECTED WITHOUT LEAVE OF THE LAND-OWNER. The law is well settled that if a building be erected upon land without the assent and agreement of the owner of the land, it becomes at once a part of the realty, and is the property of the owner of the freehold. Hence, where a railroad company, having obtained a decree for the condemnation of a tract of land, without the knowledge of the owner erected upon it a building of a permanent character for a depot, and afterward the decree was adjudged to be void; *Held*, that the building had become a part of the realty, and could not be removed by the company, and it made no difference that it was set upon posts and could be taken away without injury to the ground.

*Error to Cooper Circuit Court.*—HON. GEO. W. MILLER, Judge.

AFFIRMED.

*Draffen & Williams* for plaintiff in error.

Defendant had the right to remove the depot. Although the proceedings for condemnation were irregular and void, and the company did not acquire plaintiff's title to the lot, still the depot was placed there in good faith, and without objection from plaintiff, and it did not thereby become part of the realty. *Deitrich v. Murdock*, 42 Mo. 279; *North. Cent. R'y Co. v. Canton Co.*, 30 Md. 347; *s. c.*, 8 Am. Law Reg. (N. S.) 540; *Wickliffe v. Clay*, 1 Dana 585. Plaintiff knew that the depot was being built, and made no objection. The company understood that it had contracted for the whole lot. The plaintiff's agent saw that the depot was being built, and said nothing. Under the circumstances it did not become part of the realty. *Lowenberg v. Bernd*, 47 Mo. 297; *Goodman v. R. R. Co.*, 45 Mo. 33; *Matson v. Calhoun*, 44 Mo. 368.

*A. & J. F. Lee, Jr.*, for defendant in error.

The proof shows that the depot was built upon plaintiff's land by defendant's lessor, with full knowledge of the fact that it was her property; that she did not know at the time, nor did her agents, that the depot was on her lot, and they at no time thereafter ratified the act of the company; that such ratification, even if made, is admitted to have been made only after the building was in progress; that such a ratification would have been void, and the building, notwithstanding, remain the property of the plaintiff. Under these circumstances, it became a part of the realty and defendant had no right to remove it. Ewell on Fixtures, 251; *Madigan v. McCarthy*, 108 Mass. 377; *s. c.*, 11 Am. Rep. 371; *Howard v..Fessenden*, 14 Allen 128; 2 Minor's Inst., 535; Burrill Law Dic. "Fixtures;" *Gibbs v. Estey*, 15 Gray 588; *Huebschmann v. McHenry*, 29 Wis. 655; *Baldwin v. Breed*, 16 Conn. 60; *Climer v. Wallace*, 28 Mo. 559.

HOUGH, J.—A perpetual injunction was decreed by the circuit court in this case, restraining the defendant from removing from the north half of lot 167, in the town of Boonville, that portion of a building used by the defendant as a freight depot, which had been erected on the north half of said lot. There is no controversy in this proceeding as to the ownership of the north half of lot 167, and the only question is, whether the building was erected upon the plaintiff's lot under such circumstances as will entitle the defendant to recover it. The entire structure is seventy-five feet long and twenty-six feet wide, and is surrounded by a platform twelve feet wide. Lot 167 abuts longitudinally upon Second street, along which the defendant, as lessee of the Boonville, St. Louis & Southern Railway Company, operates a railroad. The depot building is situated upon the west side of lot 167, adjoining said street and near the center of said lot, and extends thirty-one feet

nine inches northwardly on the north half of said lot, and is used by defendant in connection with its said road. It was erected by the Osage Valley & Southern Kansas Railroad Company in the year 1868, pending proceedings by that company to condemn the entire lot, which were instituted on September 17th, 1868, and was completed in November of that year, and together with the road was subsequently transferred to the Boonville, St. Louis & Southern Railway Company, the lessor of the defendant. The condemnation proceedings were subsequently held to be void, and to confer upon said company no right to the possession of the lot in question.

When notice of proceedings to condemn was given, the plaintiff and James H. Lucas were shown by the record of deeds to be tenants in common of said lot, and said company, during the pendency of those proceedings, entered into negotiations with said Lucas, who was also agent of the plaintiff for the purpose of making sale of her property, and neither of whom lived in Boonville, to purchase the lot. Mr. Lucas referred them to one William M. Ells, of Boonville, for the sale of the lot.

It appears from the record that on the 15th day of June, 1868, the plaintiff released to James H. Lucas her interest in the south seventy feet of said lot, (for convenience we will call it the south half of said lot,) and by deed of the same date James H. Lucas released to plaintiff all his interest in the north half thereof. These deeds were acknowledged respectively on May 10th, 1869, and January 4th, 1869, and were both recorded on October 10th, 1870. On July 18th, 1868, James H. Lucas conveyed the south half of said lot to Clemence Ells, wife of W. M. Ells. This deed was acknowledged January 4th, 1869, and recorded January 15th, 1869, and was probably delivered between the last two mentioned dates.

The president of the Osage Valley & Southern Railroad Company, and Wm. M. Ells had several interviews in regard to the sale of the lot, the precise dates of which

are not given; and there is a conflict in the testimony of these persons as to what occurred at those interviews. The president of the road testified that Ells offered him the entire lot for $500, which he agreed to pay, and that the depot was constructed by the company, in good faith, relying upon the parol agreement of purchase. Ells testified that he only offered to sell his wife's half for $500, and never offered to sell the whole lot; that he was not the agent of Mrs. Hunt, the plaintiff, and had no authority to make any contract for her. There is a circumstance connected with the condemnation proceedings which strongly tends to corroborate the testimony of Ells, and to show that the president of the road was in error in his statement. In August, 1868, after Mr. Lucas received notice that proceedings would be instituted in September to condemn the lot in question, and after the date of the deed to Mrs. Ells for the south half of the lot, he wrote to Mrs. Ells, on the back of the notice sent to him, stating that the lot was partly hers by the partition made between his sister, the plaintiff in this suit, and himself, and suggesting to her to have it made known to the commissioners that she was part owner, giving as a reason therefor that the commissioners might be more apt to do justice to her than to non-residents, and to have her husband " see to the matter under the advice and experience of his father." We think the testimony clearly shows that this was done. Ells testified that he exhibited this letter to the president of the Osage Valley Railroad, and the president admitted that a letter from Lucas to Mrs. Ells was shown to him, and stated that it might have been the letter named. It was further shown that in a suit in ejectment by Ells against the Missouri Pacific Railway the president of the Osage Valley road testified that Ells did show him the letter written on the back of the notice, and that he construed it to be authority to Ells to dispose of the whole lot; and that he talked to him and to his father under that impression.

It was shown that Ells lived near the depot and made

no objection to the erection of the building. Ells said he supposed it was all on his wife's part of the lot. But this is wholly immaterial, as Ells was not the agent of Mrs. Hunt. The president of the Osage Valley road testified that Lucas was in Boonville, while president of the Missouri Pacific Railway, for the purpose of leasing the Osage Valley road, and saw the depot on the lot and made no objection; and Lucas also stated to a party, who went to St. Louis to see him about the lease, that there would be no trouble about the lot. There is nothing in the record showing any authority on the part of Lucas to constitute Ells an agent for Mrs. Hunt. It appears that the depot was built upon posts set in the ground, and that it could be removed without injury to the ground, but it was also shown that its removal would diminish the value of the north half of the lot.

It is stated in a leading work on real property, that in respect to the property in buildings erected by one man upon the land of another, the law is well settled, that if a building be erected without the assent and agreement of the land-owner, it becomes at once a part of the realty and is the property of the owner of the freehold. Washburn, vol. 1, p. 5. In Ewell on Fixtures, it is said, that " a building or other annexation placed upon the land of another without his previous consent, and without any contract with him, express or implied, that it may remain the property of the builder, as a personal chattel, becomes a part of the realty, and may not be moved by the party erecting it, or his vendee, as against the owner of the soil." p. 57. The principle announced by these authors has been applied by various courts in cases where railroad companies have entered upon the lands of others and laid their tracks and erected depots without authority of law, or the consent of the owners. *Graham v. Railroad Co.*, 36 Ind. 710; *In re Long Island R. R. Co.*, 6 N. Y. Sup. Ct. Rep. 298. But if a building be erected by a vendee on the land of another, under a parol contract of purchase, and there is

a failure to acquire title through no fault of the vendee, it seems that the building so erected may be removed by him.

We think it quite plain from the testimony in this case that the Osage Valley road did not erect the building in question under or in pursuance of any parol contract of purchase with the plaintiff, or any one authorized to represent her in the matter, and there is no testimony tending to show that the plaintiff had knowledge, or was legally chargeable with notice that the building was being erected on her land, if such knowledge or notice were material in this case. Ells swore positively that he was not her agent, and the testimony of Mr. Lucas was that he had authority to sell any of her lands, but there is no evidence that his agency was such as to charge him with the duty of protecting her property against trespassers. Indeed, from the testimony it is fairly inferable that Lucas himself had no notice of the erection and location of the depot, until after it was completed. The railroad company evidently relied upon the condemnation proceedings to give it title to the whole lot, and proceeded to erect the depot upon the plaintiff's property without the consent of any one authorized to bind her, and the building, though set upon posts, was intended, not as a temporary, but a permanent structure.

This is not a case where a party, in good faith, believing that he has a right to do so, erects a building upon the land of another, in ignorance of the title of the true owner, and without objection on the part of such owner. On the contrary, the railroad company knew who owned the land and attempted to obtain the title thereto by statutory proceedings against the consent of the owner, and pending such proceedings, and without the authority of law, so far as this record shows, built upon the land. In such case, the owner neither condones nor consents to the trespass, by failing to protest, and notwithstanding his silence may assert his legal rights within the time prescribed by law.

· The cases of *Lowenberg v. Bernd,* 47 Mo. 297, and *Matson v. Calhoun,* 44 Mo. 368, cited by the defendant's counsel, are not in point. In those cases the owners of the land assented to the erection by the co-terminous proprietors, of the structures claimed to be a part of the realty, under a misapprehension by both parties as to the exact location of their dividing line. *Goodman v. H. & St. Jo. R. R. Co.,* 45 Mo. 33, was a case in which the privilege of removal was given when the building was put up. The case of *Deitrich v. Murdock,* 42 Mo. 279, is an exceptional one and of doubtful authority. It will be observed also, that it was remarked in that case, that under the circumstances there detailed, the land owner " must be assumed " to have consented to the occupancy of his land. No such assumption is permissible in this case. We are all of opinion that the judgment of the circuit court should be affirmed.