T. S. HATTON et al. v. KANSAS CITY, CLINTON
& SPRINGFIELD RAILWAY COMPANY, Appellant.

In Banc, December 24, 1913.

1. **INJUNCTION: Sufficient Evidence: Irreparable Injury.** It
is incumbent upon plaintiff in an injunction, in order to
make out his case, to show by the testimony that his damage
will in fact be irreparable; that is, the proof must create
in the mind of the chancellor the opinion that an adequate
remedy cannot be afforded by an action for damages.

2. ———: ———: ———: **Abandoned Railroad: Suit to En-
join Removal of Fences, Rails, etc.** Where the owners of
abutting land, claiming to be the owners of the right of way
of an abandoned railroad, sue the company by injunction to
restrain it from removing the ties, rails, bridges and inclosing
fences, on the theory that they became fixtures annexed to the
soil and passed by abandonment of the railroad to them,
their suit cannot be maintained if there is no showing that
the company is insolvent, and it appears that they have an
ample remedy in an action at law for their damages, such as an
actionable trespass, if there has been a reverter of the right
of way to them and the company enters thereon, or an action
for conversion if defendant take up and carry away the rails,
ties, etc.

   *Held*, by BOND, J., dissenting, that the evidence shows a
      complete and intentional abandonment of the track by
      the railroad company, and the plaintiffs having a common
      right to the soil as the owners of the servient estate,
      injunction is allowable to avoid a multiplicity of suits
      for damages for the threatened wrongful removal of the
      fences, rails, ties, bridges and other fixtures implanted in
      the soil, which by reason of said abandonment revert to
      them along with the title to the soil.

3. **RAILROAD EASEMENT: Abandonment.** Mere nonuser of an
easement resting in grant for a period short of that prescribed
by the Statute of Limitations will not extinguish the easement,
unless accompanied by an intention on the part of the owner
of the dominant estate to abandon it; and the intention must
be to relinquish the possession of the property, followed by
an actual relinquishment to the extent that the next comer is
free to appropriate it.

4. ———: ———: **Title to Rails, etc.** And even if the rail-
road company has abandoned its easement resting in grant,

the title to the rails, bridges, ties, etc., is not thereby (there being no question of title by limitation) transferred to the servient owner—the owner of the abutting land who made the grant. In such case the railroad company is not a trespasser, or an entrant without permission, and, that being the case, the rails and other structures are erected on the land with the consent of such servient owner, and therefore are personal property, the title to which, upon an abandonment of the easement, continues in the company, and they do not revert to such servient owner, along with the land embraced within the right of way. [Disapproving Missouri Pacific Railroad v. Bradbury, 106 Mo. App. 450.]

*Held*, by BOND, J., dissenting, that the intentional abandonment of its easement accompanied by an unequivocal act which indicates that purpose, causes a reverter of the title to the land embraced in the right of way of the railroad to the then owners of the servient estate, and the reversion carries the fixtures implanted in the soil which are not seasonably removed.

Appeal from Johnson Circuit Court.—*Hon. N. M. Bradley*, Judge.

REVERSED AND REMANDED (*with directions*).

*John H. Lucas* and *James W. Suddath & Sons* for appellant.

(1) The plaintiffs have no such interest as will warrant the exercise of equitable power herein by injunctive process, and there is a plain and adequate remedy at law, the bill on its face being insufficient to constitute a cause of action. (a) Pattison Code Pleading (2 Ed.), sec. 519; State ex rel. v. Wood, 155 Mo. 446; Brake Beam Co. v. Bakewell, 224 Mo. 222; Missouri Code Pleading, Pattison (2 Ed.), sec. 536. (b) Where there is a plain, adequate and complete remedy at law, a resort to equity is improper. Stalter v. Stalter, 151 Mo. App. 66; Seibel v. Siemon, 52 Mo. 363; Gotcher v. Haefner, 107 Mo. 270; Barton Co. v. Harrington, 71 Mo. 118; State ex rel. v. Aloe, 152 Mo. 466. (2) It will be observed that the action is not that of the State of ouster for failure to discharge the duties

of a public character, but that of a controversy between citizens claiming title to certain property real, personal or mixed, the respondents basing their claim on a legal title, resting on the principle of reversion created and arising from an alleged abandonment on the part of the relator. There was no abandonment. Hickman v. Link, 123 Mo. 127; Scarritt v. Railroad, 148 Mo. 683. (3) When the fee simple is condemned, there is no reversion when the particular use for which the condemnation is had has ceased, and the person whose property is condemned cannot complain of any other use. Reichlin v. Lumber Co., 106 Pac. 777; 2 Eliott, Railroads (2 Ed.), sec. 972a. In the case at bar a majority of the right of way was acquired with covenants of warranty by deeds of conveyance, and the remainder thereof by condemnation with all the rights granted and duties incurred by our statute, and had the appellant desired to abandon the same it could not do so without the acquiescence of the State, it being within the power of the State to compel by writ of mandamus the operation of the road. State v. Railroad, 239 Mo. 234; Fritts v. Railroad, 73 Ark. 92. Hence it necessarily follows that in Missouri the doctrine of abandonment by a railroad company cannot obtain, and the decree herein should be reversed, otherwise we have this situation: the decree rests on the doctrine of abandonment, the railway expresses intention and in fact abandons, a judicial decree is secured, and the power of the State to compel the performance of public duties is at an end. Laws 1913, p. 585; R. S. 1899, secs. 1118, 1909, 3162; Nyce v. Railroad, 61 Kan. 394; Young v. Oviatt, 35 Pa. Sup. 603. (4) If as alleged in the bill the appellant has abandoned the property and it has reverted to respondents, then an adequate remedy at law exists in the recovery of damages for the trespass and conversion by appellant. It is not alleged, nor is it the fact, that appellant is insolvent and unable to respond in damages for the threatened invasion of the

rights of respondents, and nowhere does it appear why the respondents are remediless at law, nor why the injury is irreparable.  Missouri Code Pleadings, Pattison (2 Ed.), secs. 159-536; Stalter v. Stalter, 151 Mo. App. 67; Marshal v. Penn Co., 44 Pa. Sup. 68; Horton v. Railroad, 55 So. 531.

*A. A. Whitsett, James A. Kemper* and *George W. Bruce* for respondent.

(1)  The plaintiff's bill or petition states a good cause of action and fully authorized the relief sought against the defendant's interference with or destruction of the abandoned easement.  (2)  This is the proper action and plaintiffs are entitled to the relief sought and the rule that equity cannot be maintained, where there is an adequate remedy at law does not affect plaintiffs' right of action herein.  Towne v. Bowens, 81 Mo. 491; Gleassner v. Brewery Assn., 100 Mo. 508; Skerlock v. Railroad, 142 Mo. 172; Schopp v. St. Louis, 117 Mo. 131; Furbright v. Higginbotham, 133 Mo. 668; Land Co. v. Manning, 98 Mo. App. 248; Nelson v. Kelly, 145 Mo. App. 113; Railroad v. Milling Co., 138 Mo. App. 134; High on Injunctions (4 Ed.), sec. 30, p. 47; Turner v. Stewart, 78 Mo. 480.  (3)  A public easement may be abandoned by nonuser, coupled with a purpose or intention to abandon, and this may be shown by the acts and circumstances attending the conduct of the parties.  Railroad v. Bradbury, 106 Mo. App. 450; Hickman v. Link, 116 Mo. 127; Scarritt v. Railroad, 148 Mo. 682; Investment Co. v. Railroad, 108 Mo. 50; Quey v. Land, 52 S. E. 343; Bunctin v. Iaurille, 24 S. E. 803; Norfolk v. Nottingham, 30 S. E. 444; Scott v. Moore, 37 S. E. 342; New England Co. v. Distilling Co., 75 N. E. 84.  (4)  Upon the abandonment of an easement of a right of way, the right thereto is lost and the original owners may assume the possession thereof.  Railroad v. Bradbury, 106 Mo. App. 450;

Hastings v. Railroad, 38 Iowa, 316; Railroad v. Railroad, 86 N. Y. 107; Railroad v. Railroad, 63 Tex. 529; Railroad v. Railroad, 36 Conn. 196; Fernow v. Railroad, 75 Iowa, 526; Smith v. Hall, 103 Iowa, 95. (5) All fixtures attached to and put upon the right-of-way described herein, became a part of the realty, and, upon abandonment of the easement, the defendant lost all interest therein, and had no right to remove the same. Hunt v. Railroad, 76 Mo. 115; 3 Wait's Actions and Defenses, p. 379; Jones Real Property, sec. 1729; Van Beureu v. Railroad, 38 N. J. L. 165; Fostlick v. Shaw, 99 U. S. 235; Wade v. Railroad, 149 U. S. 327; Denman v. Railroad, 26 S. W. 304; Railroad v. Bradbury, 106 Mo. App. 450. (6) Abandonment divests title as fully as a conveyance, and it operates from the time of the act of abandonment, or the purpose to abandon became complete. McGoon v. Aukeny, 11 Ill. 558; Gluckauf v. Reed, 26 Cal. 468; Railroad v. Bradbury, 106 Mo. App. 450. (7) The defendant having abandoned the easement, but not having restored the possession, the plaintiffs had no plain, adequate and complete remedy at law, for redress of the wrongs that might be sustained to the realty. Railroad v. Bradbury, 106 Mo. App. 450. (8) The State could not compel the railroad company to operate its road; nor can it restrain it from taking up and removing the irons and materials of the road, at the time the abandonment occurred. 1 Rener on Railroads, p. 573.

FARIS, J.—This is a proceeding in equity whereby plaintiffs seek to enjoin the defendant from entering upon certain real estate, averred in the petition to be an abandoned right of way of defendant, and removing therefrom certain right-of-way fences, steel rails, ties, bridges, abutments and cattle guards. The action was commenced sometime in 1905 and tried in 1908 in the circuit court of Johnson county. Upon the trial plaintiffs prevailed and a decree was entered in their favor

as prayed for in the petition. From this decree defendant has appealed.

Upon the trial defendant interposed a demurrer, chiefly upon the ground that the amended petition filed by plaintiffs in the cause failed to state any cause of action. This demurrer was overruled; whereupon defendant answered over by a general denial. The point raised as to the sufficiency of the petition was again made at the commencement of the hearing of the testimony below by an objection to the offering of any testimony for the lack of sufficiency of averment in the petition. On account of these attacks upon the petition, and upon the sufficiency of the evidence and for the additional reason that other points made may be somewhat clarified, we append the petition upon which the case was tried, formal parts omitted:

"Plaintiffs, for their amended petition herein, state that the defendant, the Kansas City, Clinton & Springfield Railway Company, is a corporation duly organized and existing under and by virtue of the laws of the State of Missouri, and was organized for the purpose of operating a railroad line leading from Springfield, Missouri, to Kansas City in the State of Missouri, and that the other defendants were agents, servants and employees of the said railway company.

"Plaintiffs further state that they are the owners of the following described real estate, situate in Cass county, Missouri, to-wit:

"A strip of land one hundred feet wide, being the lands formerly used as a right of way of the defendant, the Kansas City, Clinton & Springfield Railway Company and originally known as the right of way of the Pleasant Hill & Terminal Branch of the Missouri Pacific Railway Company, which said right of way begins at Pleasant Hill in said Cass county, and runs in a westerly direction to section twenty-five, township forty-six in range thirty-two in said Cass county, which said strips or parcels of land run through and

are contiguous to the following described real estate
in Cass county, to-wit:   [Here follow descriptions of
the tracts of land through which the right of way runs,
and not pertinent herein.]   Formerly known and called
'The right of way of the Pleasant Hill & Lawrence
Branch of the Pacific Railroad.'

"Plaintiffs further state that they and their grant-
ors have been the servient owners of said real estate
since the —— day of ——, 19—.

"Plaintiffs further state that on the said lands
and on and along the route of the said railroad and
the strips of land above described, formerly used as a
right of way, as aforesaid, there are railroad ties em-
bedded in the ground about six inches apart for the
entire length of said strips of land and that stretched
across and nailed or spiked to the said ties are steel
and iron rails; that there are fences on each side of
said right of way, in places, and a large number of
bridges and abutments, side tracks and cattle guards,
all of which are attached to and embedded in the soil,
earth or real estate, and become and are a part
thereof.

"Plaintiffs state that prior to the —— day of
——, 18—, the defendant corporation, the said Kansas
City, Clinton & Springfield Railway Company, at-
tempted to operate railway trains of cars and engines
over and along the said right of way and upon the
track aforesaid; that on the —— day of ——, 18—, the
defendant corporation ceased to use said right of way
and to operate or run any locomotives or trains of cars
over and along said track or any part thereof, or to
use, operate or occupy the same or any part thereof
and ceased to use or occupy the said right of way and
to operate or attempt to operate any trains of cars
thereon, and on any part thereof, and the ownership
and the right to the possession of said strips of ground
and other property thereon, passed to and vested in
the owners of the land contiguous thereon.

"Plaintiffs further state that the defendants notified these plaintiffs and their grantors and the servient owners of said real estate that they would no longer occupy or use the right of way for railroad purposes, but would cease to use and occupy the same as such, and have never since said time run or attempted to run any railroad trains thereon or to use the same for railroad purposes in any way or manner whatever.

"Plaintiffs further state that the defendants have threatened to go upon said real estate and to tear up and remove therefrom, said rails, ties, bridges, piers, abutments and fences and to deprive the plaintiffs of the same, and that the said defendants are now about to, and unless they be restrained and enjoined therefrom, will tear up and remove said tracks, ties, rails, bridges and abutments, fences and cattle guards, off of and away from said premises.

"Plaintiffs further state that the removal of said rails, ties, bridges, piers, abutments, fences and cattle guards as aforesaid will injure the real estate above described and greatly depreciate the value thereof and that unless defendants be restrained and prevented from removing the same, the plaintiffs will sustain irreparable injury in the loss of said property, and damage to their said real estate; that the plaintiffs have no adequate remedy at law afforded them by which to compensate themselves for injury and damages which would ensue to these plaintiffs and which they would sustain by reason thereof.

"Wherefore, plaintiffs pray the court to perpetually restrain and enjoin the defendants from entering upon said real estate for the purpose of removing said fences, rails, ties, bridges, tracks, abutments and cattle guards therefrom, or from taking up and converting the soil of said real estate, or doing any other act tending to remove or destroy any of the property above described; and that in the meantime, a temporary injunction may be allowed restraining said defendants,

or associate agents, contractors and servants or any other persons acting in aid or assistance of them or either of them from removing or injuring in any way, any of the fences, rails, ties, bridges, piers, abutments or cattle guards, and all such other and further relief as to the court may seem just and proper in the premises.''

Upon the trial the testimony tended to prove that the railroad track and right of way in question, about which this controversy revolves, is in length some seven or eight miles; that when originally constructed at some indefinite time prior to the year 1882, it formed a part of what was known as the Lawrence Branch of the Santa Fe Railway, and ran west from Pleasant Hill to Lawrence, Kansas; that subsequently, also at an indefinite date, it became the property of the defendant and was operated by the defendant as a part of its railroad until about the year 1888, when, by reason of the construction of other railroads in the vicinity, particularly west and south of the town of Pleasant Hill, it became possible to get into or get by Pleasant Hill without the use of the seven miles of track here in question, which is that part of the old Lawrence Branch extending from what is called Raymore Junction, which is some seven miles west of Pleasant Hill and on the main line of defendant's railroad, to Gowdy Switch, which is about one-half mile south of Pleasant Hill. After the year 1888 the track in question was used only occasionally until the year 1902, when all use thereof ceased until sometime in the month of May, in the year 1905, at which time a work train went over a portion of this track and repaired it; but neither did this train go over the whole of it, nor was the whole of the track repaired. Prior to the bringing of this action something like five and a half years had elapsed since this part of the track here in controversy had been used by the defendant for the purpose of operating a train thereon as a common carrier. The repairs and the run-

ning of the work train over a part of the track, infer-
ably, were done with a view of so repairing it as to
enable the defendant to take off its fences, ties, cattle
guards, rails and bridges, or such part thereof as had
sufficient value to warrant removal.    But this rests
alone in broad inference; there is no direct proof that
this is so.

It further appears that portions of this track and
the right of way were fenced by farmers living adja-
cent to it as early at least as the latter part of the year
1902, and the portion thus fenced was used for a pas-
ture from that time until the date of the bringing of
this suit.    Portions of the right of way were also in
cultivation by adjoining farmers, but to what extent
such fencing of the track and right of way was done,
or to what extent cultivation thereof was had by ad-
joining farmers, does not appear, except that both fenc-
ing and cultivation of the right of way seem to have
occurred in one instance and to have been continued
for five years and a half.    It was shown that trees, in
some cases twenty-five feet in height, had grown up on
the right of way, and that at the time of the bringing
of this suit, by reason of the condition of the track and
right of way, arising from the rottenness of the ties and
the looseness of the rails thereon and of the growth of
bushes and small trees between the ties, and between
the rails, it was impossible to use this track as a rail-
road.

It also appears from the evidence that shortly be-
fore the institution of this action a Mr. Perry, who is
shown by the testimony to have been at the time a
superintendent of the defendant, stated to divers per-
sons that defendant was going to move its tracks from
the land in question and allow the land to revert to the
owners of the servient estate, and that it desired to
sell the right-of-way fences.    Some of these fences were
actually sold in June, 1905.    It is to be inferred from
the testimony that the efforts of the defendant to sell

its remaining fences and the statements made as to defendant's intentions to move the rails, occurred just prior to the bringing of this action, since the testimony indicates that the original suit was brought sometime in December, 1905. The record does not disclose when or where it was originally filed. The amended petition upon which it was tried was filed in October, 1908. What became of it in the meantime, in what court or for what reason it was languishing, or how it came to be in the Johnson Circuit Court where it was tried, does not appear from the record.

The evidence on the part of the plaintiffs is vague, indefinite and uncertain; no dates are given with any definiteness or certainty. Each witness offered by plaintiffs differs from the others as to the date of the construction of the road; its change of ownership; the time at which regular trains ceased to run; the time at which trains ran irregularly; the time when they ceased to run at all; the time when an engine and caboose were used on these tracks, and when the use of such engine and caboose ceased altogether, as well as to the dates at which, and the extent to which the lands were used for pasture and agricultural purposes by adjoining farmers.

The evidence also shows that prior to the institution of this suit and in September, 1901, an action had been brought by mandamus to compel the operation of this road, but the record fails to show what became of this suit. Defendant's answer to this mandamus suit, among other things, denied that it owed the duty of running a train over this road or of stopping the same at Pleasant Hill, and averred that no public necessity existed for the operation by defendant of any train into Pleasant Hill, and averred further that the expense of operating such a train on this track into Pleasant Hill had, since 1885, exceeded the revenue derived therefrom by more than $100,000.

The defendant put in no evidence at all. It contented itself with a demurrer to the sufficiency of that offered by plaintiffs.

The plaintiffs are the grantees of the former grantors of the original right of way. The conveyances to plaintiffs from such former grantors seem to have been for the purposes of this suit only, but the deeds of conveyance are not set out in the record. The statement was made upon argument that plaintiffs were themselves former grantors of a part of the right of way, but the record does not bear out this statement, and they appear here merely as grantees in deeds conveying to them the right of way aforesaid for the purposes of this action. The defendant, or its predecessor, obtained the right of way in question partly by conveyances from the owners in the usual form and partly by condemnation in the usual way provided by statute; the whole of the right of way in question having vested in defendant's predecessor in one or the other of the two methods.

This statement will be eked out if necessary by the recital of such other facts in the opinion as we may be able to dig out of this most difficult record, if such shall, in the course of the expression of our views, become necessary.

## OPINION.

I. The two contentions lodged with us and strenuously urged upon us are, (1) that the petition does not state facts sufficient to constitute any cause of action against the defendant, and (2) that the evidence is not sufficient to make out any case for plaintiffs, and therefore the demurrer of defendant to the evidence of plaintiff ought to have been sustained.

If it be true that the contention of defendant last set out is borne out by the record, it is clear then that it makes but little difference whether the petition was sufficient or not.

It would be reasonably clear from the record (even if counsel for plaintiffs had not, *ore tenus* and in their briefs, candidly admitted this to be so) that in the last analysis this controversy is over the rails, fences, ties, bridges and other personalty having value, and which it is alleged became fixtures by annexation to the soil and passed by abandonment to plaintiffs as the assignees of the former owners and grantors of the right of way.

*Injunction: Sufficient Evidence.*

Upon looking to the testimony we find that since 1892 the railroad at the point in question has not been operated as a railroad for the accommodation of the public, except intermittently. Up to 1901 defendant ran an engine and caboose over the track occasionally until about February, 1902, when this, or any other use of it by defendant, ceased wholly, till along in May or June, 1905, when a repair train with a repair crew went over a part of this track and made repairs thereon. How much of it was traversed by this repair train and how much of it was repaired, is left blind in the record.

In the latter part of the year 1902 a Mr. Elliott, who was a witness in the case, and who apparently owned a farm somewhere along this road, fenced up a part of the right of way thereof for a pasture by erecting two fences over and across the right of way, including the railroad track itself. This inclosing of the road occurred a little more than three years before this action was begun. The record is silent as to whether such inclosed and pastured part of the right of way was claimed by Elliott, or whether, while inclosing and using same, he recognized defendant's ownership thereof. Upon the question of abandonment, or of defendant's intention to abandon, outside of the inferences, if any, to be deduced from its acts, the witness Elliott, whose testimony is on this point practically an echo of two or three other witnesses for plaintiff, said:

"Q. Now, did you meet Mr. Perry, the superintendent of the company? A. Yes, sir, in the summer of 1905. . . . And Mr. Perry says, 'I came here to sell you the fence on both sides of this road.' I says, 'The fence on one side is practically not worth much. On this side it is pretty fair fence,' and I drove home in the buggy and they went over towards Raymore Junction. He offered to give it to me at sixty dollars and throw the hog wire fencing in. He says, 'I won't charge you anything for it, or the posts,' and the wire we estimated to be at sixty dollars. I says, 'I can pay you most any time.' He says, 'no bother about the time, any time this summer or fall you can pay me for it.' *He says, 'we are going to take up this track and the land will have to go back and then you ought to own the fences.'* "

The proof does not disclose wherein the railroad track or the right of way in question, or the rails in controversy, differ from any other track, or right of way or rails. Regardless of whether in the absence of a motion to make more definite and certain, the statement in the petition herein that the damage accruing to plaintiffs is irreparable, is as a conclusion of law sufficient here (regard being had to the form of the attack on the petition), we are yet met by the fact that it is incumbent on plaintiffs when they come to make out their case to show by the testimony that their damage will in fact be irreparable.

It is true that our statute permits the use of the remedy by injunction in all cases where "an irreparable injury to real or personal property is threatened, and to prevent the doing of any legal wrong whatever, *whenever in the opinion of the court* an adequate remedy cannot be afforded by an action for damages." [Sec. 2534, R. S. 1909.] It would be clear to us even if counsel for plaintiffs had not ingenuously and candidly admitted it, that the real controversy here

is over the rails, and such other property, if any such there be of value, now remaining on the old right of way. Many cases occur to us wherein the necessity of an interference by injunction might arise within the purview of this section. For example, in case of the threatened loss or destruction of personal property, as a wedding present or an heirloom having a special or affection value, but whose real value is negligible, or out of proportion to the esteem in which the owner holds it; or in case of the entry upon lands and the threatened destruction of shade trees. These, we opine, as well as many others of similar sort, would be special reasons taking the case out of the general rule and bringing it within the statute. [McPike v. West, 71 Mo. 199.] But nothing is clearer than that when we pass beyond the usual domain of equity, but invoke its interference because of some other sort of threatened irreparable injury, or lack of an adequate remedy by an action for damages, the special reasons must be shown by the proof. That is what the statute itself says in effect. The proof must follow the allegations of the petition and create in the mind of the chancellor the opinion that "an adequate remedy cannot be afforded by an action for damages." [Weigel v. Walsh, 45 Mo. 560.] There is no such proof in this record. Defendant is not shown or averred to be insolvent. If there has been by abandonment, a reverter of the right of way to the grantor thereof, or to the assignee of the grantor, and defendant enter thereon, will not such entry constitute an actionable trespass? If defendant take up and carry away and convert to its own use the rails upon said right of way, will not an action lie for conversion, if it be true that the title to these rails has for any reason passed to plaintiffs? There is naught in the proof, or for that matter in the petition either to negative either of these propositions. There is an entire absence in petition and testimony of allegations or proof that the plaintiffs will be put

to a multiplicity of actions unless relief in equity be granted. Besides, the whole case of plaintiffs rests upon two doubtful and contested facts: First, has there been an abandonment of the right of way; and second, did such abandonment serve to pass title in the rails to plaintiffs? Plaintiffs assume as true both premises and upon this assumption ask that injunction issue. [Echelkamp v. Schrader, 45 Mo. 505.] We suggest so much *arguendo,* without asserting that these facts would be an insuperable objection.

Plaintiffs, so far as appears, are seized in the assignment as tenants in common, so there is nothing in defendant's objection that they may not sue here jointly; in fact, upon this record they could not have sued otherwise.

It follows that we are constrained to hold that the testimony was not sufficient to make out any cause of action against the defendant, and that the demurrer interposed at the close of plaintiffs' case ought to have been sustained.

II. Having reached this conclusion, we might with all propriety and in conformity with precedents leave the matter here. But it is apparent that to do so would leave undisposed of the question, as to whether the property in the rails has passed to the servient owners of the land on which the rails lie, and if the property therein has not so passed to such owners whether the defendant here may enter and remove these rails. We use the word rails as symbolical of all of the alleged fixtures in controversy here.

Nor does it greatly matter in the view which we take of the case whether there has been an abandonment of the easement theretofore enjoyed in the right of way by defendant or not. Mere nonuser of an ease-

**Easement: Abandonment.** ment resting in grant (and the weight of authority is as to an easement arising by prescription, also) for a period short of that prescribed by the Statute of Limitations,

will not extinguish the easement, unless accompanied by an intention on the part of the owner of the dominant estate to abandon it. [Edgerton v. McMullan, 55 Kan. 90; Crigler v. Newman, 91 S. W. 706; Tabbutt v. Grant, 94 Me. 371; Cox v. Forrest, 60 Md. 74; Emerson v. Wiley, 10 Pick. 310; Manning v. Railroad, 54 N. J. Eq. 46; Miller v. Garlock, 8 Barb. 153; Roanoke Inv. Co. v. Railroad, 108 Mo. l. c. 64.] There must be an intention to abandon; that is, an intention to relinquish the possession of the property, without an intention to again repossess it (Banks v. Banks, 77 N. C. 186; Moon v. Rollins, 36 Cal. 333; Smith v. Cushing, 41 Cal. 97); such intention must be followed by an actual relinquishment of possession, so that, and to the extent that the property abandoned is left free and open to be appropriated by the next comer. These unities concurring time is not of the essence. [Livermore v. White, 74 Me. 452; Hickman v. Link, 116 Mo. l. c. 127; Stevens v. Norfolk, 42 Conn. 377; Haslem v. Lockwood, 37 Conn. 500.]

In the case of Hickman v. Link, supra, the rule was thus stated:

"Abandonment in law is defined to be 'the relinquishment or surrender of rights or property by one person to another. . . . Abandonment includes both the intention to abandon and the external act by which the intention is carried into effect.' 'To constitute an abandonment there must be the concurrence of the intention to abandon and the actual relinquishment of the property, so that it may be appropriated by the next comer.' [1 Am. and Eng. Ency. Law, p. 1, and note 5.]"

Therefore when we have regard to the facts: That the right of way in the instant case does not rest on prescription; that the last engine and caboose went over this track in the early part of 1902; that a part of the right of way and track was fenced for a pasture in the latter part of 1902; that in May or June, 1905,

part of this track was repaired and an engine and work train was run over part of it; that some of the fence was sold and efforts made to sell other parts thereof; that the agents of defendant then said *"that they were going to move the track and the land would revert back to the farmers there, right to the center of the track,"* and that in order to prevent the work train in question, or another one from taking up the rails this action was deemed necessary, and actually instituted sometime in 1905; we are still not able to see in these facts, or upon this record such acts as bring the defendant within the purview of the accepted definition of abandonment.

But even should we be in error as to this, and even if defendant has already abandoned rather than simply expressed an intention to abandon when it shall have sold its fences and its bridges, and shall have taken up its rails, does this transfer the title to these rails from the defendant to the plaintiffs, as assignees —presumably—of the original grantors?

Abandonment of Easement: Title to Rails, Ties, Bridges, etc.

This is the itching question in this case. Shall defendant lose its rails because from the early part of the year 1902 till the month of May or June, 1905, it ran no engine, or cars, or trains over this road? There can be no natural justice in such a claim. Upon the facts before us defendant has been guilty of no acts making meet as fit punishment such a severe penalty; nor have plaintiffs by anything appearing in the record, done any acts or expended money for labor, or erected improvements on the right of way, or suffered any losses or hardships at defendant's hands which entitle them to so great compensation. The law, as has been said, views a forfeiture with the same dislike as nature looks upon a vacuum. If there is so harsh a rule it ought to be well settled in reason, before it shall be allowed to override the crying equities of the facts before us.

We think that there is but one view that, where the railroad is a trespasser and in most cases and for most purposes, rails, ties, bridges and other paraphernalia formerly personal property, when affixed to the soil, become real estate. But that is not the case when a dispute arises between the railroad company, or its assignees, and the owner of the servient estate, in those cases where the dominant estate has arisen from consent express or implied. Where a house, a depot or other structure is erected by the railroad upon the land of another pursuant to an act of trespass, or *without any permission,* then the structure becomes a fixture and may not be removed. [Hunt v. Railroad, 76 Mo. 115.] This is but a stating as a truism, the converse of the general rule as to fixtures, which is: That structures erected upon the land of another *with the consent of such owner,* continue to be personal property. [King v. Morris, 14 L. R. A. (N. S.) 439, and cases cited; Ingalls v. Railroad, 39 Minn. 479; Western North Carolina Railroad v. Deal, 90 N. C. 110; Collins v. Taylor, 101 Me. 542; Priestley v. Johnson, 67 Mo. 632; Ford v. Burleigh, 62 N. H. 388.] If there be a question as to such consent, or a question as to an agreement that it shall become a fixture, the tests have been said to be: (1) Real or constructive annexation of the property in question to the soil; (2) adaptation of the property in question to the ordinary use or purposes of the land to which the alleged fixture is annexed, and (3) the intention of the party making the annexation to make the property in question a permanent accession to the freehold. [Scobell v. Block, 31 N. Y. Supp. 975; Taylor v. Collins, 51 Wis. 123; Dudley v. Hurst, Miller & Co., 67 Md. 44.] And of these three unities the question of intention is said to be controlling. [Press Brick & Machine Co. v. Brick & Quarry Co., 151 Mo. 501.] And this presumption of intention has been held to be the governing test in a case such as the instant one as to rails of a railroad

erected with permission of the owners of the freehold. The rule is stated by Elliott thus:

"The presumption is that rails and similar structures placed by a railroad company upon land taken by it for a right of way are affixed to the land with a manifest intention to use them in the operation of the railroad, and hence, are not to be regarded as fixtures forming part of the real estate." [2 Elliott on Railroads (2 Ed.), sec. 998, citing Northern Central Ry. Co. v. Canton Co., 30 Md. 347; Wagner v. Cleveland, etc., Ry., 22 Ohio St. 563; Hays v. Texas, etc., Ry. Co., 62 Tex. 397.]

In harmony with this view and in point upon the chief question vexing us here, it was held in the case of Corwin v. Cowan, 12 Ohio St. 629, thus:

"Upon the abandonment of a canal by the State —its then owner—the easement terminated and the right of the possession of the lands constituting the line of the canal reverted to the owner of the freehold, but such reversion did not carry with it the ownership of the materials used in the construction of the locks and the materials used in constructing the canal over and through the premises. Such structures and materials never having been intended as annexations to the freehold and having been rightfully erected, may be removed by the assignee of the owner of the canal upon such terms as may under the circumstances of the case be equitable."

The case of Wagner v. Railroad, 22 Ohio St. 563, was in many phases a case on all fours with the instant one, except that in that case the abandonment of the right of way occurred before the railroad was completed, and before it was ever operated at all. Notwithstanding this it was held:

"Stone piers built by a railroad company as part of its railroad, on lands over which it has acquired the right of way for its road, do not, though firmly imbedded in the earth, become the property of the owner

of the lands as part of the realty. And, on the purpose of completing the railroad being abandoned, the company may remove such structures as personal property. In case of such abandonment, the fact that the landowner has been allowed to take possession of the land embraced in the right of way, and hold it for a term of years less than is required to extinguish the easement, does not, of itself, imply a relinquishment on the part of the railroad company of its right to enter and remove the piers.''

The case of McNair v. Railroad, 14 N. Y. Supp. 39, was a case where a tenant for life of a farm, living thereon with his children, the remaindermen, who were all infants, having no general guardian, agreed with a railroad company for appraisement of damages for the construction of its railroad upon the land, and that it might enter for that purpose. The company entered and took possession. Afterwards, no appraisal having been made, the father agreed in writing to convey to the railroad company a right of way across the land for railway purposes, for which the company agreed to pay a certain sum, having already paid part thereof. The company never took proceedings to acquire the right of way, and never paid any further damages for the occupation and use of the land; and defendant, successor to its property and franchises, removed the railway structures from the land, and abandoned the right of way, and the land remained in the possession of the tenant for life. Held, that he and his children could not maintain an action against defendant for removing the railway structures on the ground that they had become part of the realty.

In the case of Pennsylvania Railroad Co. v. Parke, 42 Pa. St. 31, it was held that where land is granted in fee simple to be occupied for railroad purposes only and to revert to the grantor or his heirs if used for any other purposes, or no longer needed for such use, the reversion does not take effect until actual abandon-

ment; and hence, until that time the railroad company, the grantee of the original taker, may remove the machinery in their shops erected on the land granted. Likewise the case of Young v. Oviatt, 35 Pa. Sup. 603, was like the instant case, a suit by injunction to prevent the assignee of a certain railroad from removing a building which had been constructed on the railroad right of way for use as a passenger depot, office and freight house. The deed of conveyance of the land upon which the building stood specifically provided for a reverter to the grantor whenever and in the event that the grantee or its successor "shall fail to use the said premises as a passenger depot;" held, nevertheless, and quoting with approval as authority therefor, Wagner v. Railroad, supra, that injunction would not lie. In this case, among other things, the court said:

"The fact that the estate conveyed by the grantor to the grantee reverted to the former, upon the abandonment of the railroad, and that the grantor entered upon the possession of the land, did not in our opinion prevent the vendee of the grantee from removing the structure erected by the former, in accordance with the terms of the grant. The erection was entirely consistent with the grant and with the uses and purposes for which it was made. It did not, therefore, become a part of the realty, but was a part of the estate granted, and, upon the reversion thereof, remained the property of the grantee. The right to sell the same was no greater than the right of removal and, when sold, the vendee had the same right to remove as had his vendor."

The rule deduced by 33 Cyc. 226, upon the several questions of abandonment, reverter and forfeiture of the rails and other alleged fixtures to the owner of the servient estate, is in entire consonance with these views, and is thus stated:

"Where a railroad company having an easement in land for a right of way or other railroad purposes

abandons or forfeits the right to the same or a portion thereof, the title and right to the land abandoned or forfeited reverts and entitles a recovery thereof by the grantor, or the then owner of the servient estate; and even where the servient estate has been transferred to another, the abandoned or forfeited land reverts to the original grantor if the deed or grant expressly so provides, or the reversionary interest has not otherwise passed out of such grantor. Under some statutes this reversion takes place without a reconveyance or order of court, upon the owner's retaking possession of the property. If the grantor' who is in possession and control of the property in the *bona fide* belief that the company has abandoned the same conveys it to a *bona fide* purchaser, the railroad company is estopped to assert any easement under its deed against such purchaser. A reversion for an abandonment, however, does not take effect until there is an actual abandonment. Where the company's occupation of the land is not illegal, its rails and other structures thereon do not become a part of the realty, and it should have a reasonable time in which to remove them, upon abandonment; and the fact that the landowner has been allowed to take possession of the land embraced in the right of way and hold it for a term of years less than is required to extinguish the company's easement does not imply relinquishment by the company of its right to enter and remove its structures.''

Directly in point and to the same effect is the case of Western Railroad v. Deal, 90 N. C. 110, and the case of Northern Central Ry. Co. v. Canton Co., 30 Md. 347. If this were not the law, if an abandonment of any part of a railroad right of way had the effect instantly to produce a forfeiture of the rails, and depots, and culverts, and bridges thereon, and cause the title thereof to pass by that token, irrevocably, from the railroad to the owner of the servient estate, no railroad could ever again straighten or shorten its track, or eliminate

curves or cut down grades by abandoning one right of way for another, either near or distant, except at the sacrifice of all rails, bridges and depots on the old right of way, and at the risk of being enjoined from the use of the old right of way, the very moment a new one is acquired and an intention expressed to take up the old track when, and as soon as, the new, or more level or more direct route shall be completed.

Save and except the case of Missouri Pacific Railroad Co. v. Bradbury, 106 Mo. App. 450, which was a case where there had been no use whatever of the track in question for eighteen years, we have not found a single case, nor has the industry of learned counsel found for us a case, where a forfeiture of rails was held to accrue upon the abandonment of an easement of right of way acquired otherwise than by trespass. The law is all one way, with the exception of the case of Missouri Pacific Railroad Co. v. Bradbury, supra, which should, so far as it conflicts with our views herein, be no longer followed.

We need not pass upon the question of an abandonment to be deduced as a matter of inference from nonuser for a period of ten years, accompanied by adverse possession of the land embraced in the right of way, for a period equal to or greater than required to transfer title by our Statute of Limitations; for these questions are not before us.

It follows that the case should be reversed and remanded with directions to dismiss plaintiffs' bill and enter judgment for defendant. It is so ordered. *Lamm, C. J., Woodson, Graves, Brown* and *Walker, JJ.,* concur; *Bond, J.,* dissents, in an opinion filed.

## DISSENTING OPINION.

BOND, J.—The petition charges, in substance, that the defendant railroad at one time constructed a spur from a point on its main line in Cass county to

the town of Pleasant Hill, in said county; that the servient estate upon which this spur was constructed belonged to the grantors of plaintiffs and is now owned by the respective plaintiffs; that the strip of land upon which this spur track is laid is one hundred feet wide and contains railroad ties, steel and iron rails, bridges, abutments, sidetracks and cattle guards—all of which have become a part of the real estate—and is fenced in on each side. The petition then alleges, that having theretofore used this spur track for railway purposes and having caused trains of cars and engines to pass along and over the same, on the —— day of ——, 19—, the defendant corporation ceased to use or occupy said right of way or any part thereof, and that "the ownership and the right to the possession of said strip of ground and other property thereon, passed to and vested in the owners of the land contiguous thereon. Plaintiffs further state that the defendants notified these plaintiffs and their grantors and the servient owners of said real estate that it would no longer occupy or use the right of way for railroad purposes, but would cease to use and occupy the same as such, and has never since said time run or attempted to run any railroad trains thereon or to use the same for railroad purposes in any way or manner whatever. Plaintiffs further state that the defendants have threatened to go upon said real estate and to tear up and remove therefrom said rails, ties, bridges, piers, abutments and fences and to deprive the plaintiffs of the same, and that the said defendants are now about to, and unless they be restrained and enjoined therefrom will, tear up and remove said tracks, ties, rails, bridges and abutments, fences and cattle guards, off of and away from said premises. Plaintiffs further state that the removal of said rails, ties, bridges, piers, abutments, fences and cattle guards as aforesaid will injure the real estate above described and greatly depreciate the value thereof and that unless defendants

be restrained and prevented from removing the same, the plaintiffs will sustain irreparable injury in the loss of said property and damage to their said real estate; that the plaintiffs have no adequate remedy at law afforded them by which to compensate themselves for injury and damages which would ensue to these plaintiffs and which they would sustain by reason .thereof." The petition concluded with a prayer for a temporary injunction to be made perpetual on final hearing.

After the overruling of its demurrer, the defendant answered by general denial. There was evidence tending to prove all the allegations contained in plaintiffs' petition. Defendant introduced no evidence, but stood upon its demurrer to the evidence. The court rendered a decree, that the plaintiffs were the owners. of the land described in their petition; that the defendant railroad had before the beginning of the suit abandoned the same; and that the title and right of possession and control had reverted to and vested in the plaintiffs; that the ties, bridges, abutments, fences and cattle guards theretofore placed upon said strip of land had become a part of the real estate; and that the temporary injunction granted upon the institution of the suit be made perpetual. After the overruling of its motion for new trial, defendant appealed.

The errors assigned relate (1) to the sufficiency of the petition to state a cause of action; (2) to the insufficiency of the evidence in support of the petition to sustain the decree.

## I.

In addition to the general jurisdiction in chancery which is devolved on the trial courts under the procedure in this State, their powers as to the issuance of injunction are enlarged by the express terms of the statute and may be exerted "to prevent the doing of

any legal wrong whatever, whenever in the opinion of the court adequate remedy cannot be af-

Pleading:
Injunction:
Cause of
Action.

forded by an action for damages." [R. S. 1909, sec. 2534.] It is evident that this statutory authority for the writ authorizes its issuance in cases where it could not be obtained under the rules governing courts of chancery in England and the United States, as established by ordinary equitable principles of procedure. [Jones v. Williams, 139 Mo. l. c. 37; Towne v. Bowers, 81 Mo. l. c. 496; Turner v. Stewart, 78 Mo. l. c. 408; Bank v. Kercheval, 65 Mo. l. c. 688; State ex rel. v. Hager, 92 Mo. 511; Owen v. Ford, 49 Mo. l. c. 437; Brewing Co. v. Water Works Co., 34 Mo. App. l. c. 54.]

The paragraph of the petition, quoted in the statement, which alleges injury to the real estate of plaintiffs and the depreciation of its value and the irreparable damage which it would receive in case the rails, ties, bridges, piers, abutments, fences and cattle guards are permitted to be taken therefrom by defendant, was not attacked in the lower court by motion to make more definite and certain or by special demurrer. Under these circumstances and after verdict in plaintiffs' favor, we must treat the paragraph in question as if it had specifically pleaded the facts and circumstances affording a legal basis for the general charge contained therein. Under that assumption, the petition cannot be held to show on its face that plaintiffs were possessed of a full, complete and unembarrassed remedy "by action for damages at law." Hence, under the broad language of the statute, it does not fail to show ground for equitable relief. There is, however, another distinct head of equity upon which this action is sustainable. The plaintiffs have a common right to the soil in controversy as successors in title of the original owners of the servient estates. In such cases the right to relief

in equity is clear to avoid a multiplicity of suits for redress of repeated and continuous injuries to property, and to secure in one action a determination of the issue as to which the plaintiffs have a common right. We see no good reason why the plaintiffs in this case should have been relegated to distinct suits by action at law for damages to their property. At the time this action was begun the damages to the property of plaintiffs were only threatened. To prevent the infliction of these injuries they were not required to sit by and wait for the completion of the damage, but were entitled to come into equity in the first instance and prevent the injuries threatened by defendant. We rule that the petition does not wholly fail to state any ground for equitable relief on its face.

## II.

The second point made by appellant as to the insufficiency of the evidence is not well taken. The evidence for plaintiffs was full and complete, showing that they had acquired the general title owned by the parties from whom the railroad had obtained its right of way either by the conveyances of the *right of way* or by condemnation of the *right of way*. The undisputed evidence disclosed that the spur track in question had been completely abandoned before the bringing of this suit; that it was not used for railroad purposes; that no trains could have passed and repassed because the long disuse of the track had been followed by a growth of young trees between the ties and between the rails, forming a physical obstruction in the passage of locomotives and trains of cars; that a mandamus suit had been brought in the circuit court of Cass county by the Railroad Commissioners of the State of Missouri in 1901 to compel defendant to run one train a day over its railroad and stop the same at the city of Pleasant Hill, the terminus of the

**Injunction: Sufficient Evidence: Abandonment of Easement.**

spur. Among other defenses which were made by the defendant, was the allegation in its answer to that proceeding, that ''there was no public necessity for the operation of any trains on its part to the city of Pleasant Hill; that the entire revenue received from the beginning of the operation of said road to said city, namely, from 1885 to the present time, had been and is wholly inadequate to defray and pay the actual cost of running the same, but each and every year of the operation thereof has entailed a heavy loss on defendant, the aggregate of which exceeds one hundred thousand dollars. That no public demand exists for the operation thereof and that the revenues of the defendant are wholly insufficient to pay the costs and expenses thereof.''

Indeed, the learned counsel for appellant in summarizing the evidence relating to abandonment of use of this portion of its track, stated ''that prior to the bringing of this action it discontinued the operation of its trains thereon, whether temporarily or permanently may be well the subject-matter of doubt.'' The evidence in the record does not leave any doubt on that subject in our minds, and we think justified the conclusion of the learned trial judge, that by intention, as well as by external acts evidencing that intention, the defendant made a complete and full abandonment of its right of way over the land in question, and that the same reverted to the owners of the servient estate —plaintiffs in this action. [Investment Co. v. Railroad, 108 Mo. 50; Hickman v. Link, 116 Mo. l. c. 127; Railroad v. Bradbury, 106 Mo. App. l. c. 455.]

Our conclusion is that the judgment of the trial court was manifestly correct.

The foregoing opinion prepared when the case was assigned to me in division, gives the reasons why I think the judgment in this case should be affirmed and why I dissent to the first paragraph of the opinion of my learned associate in Banc. I further dissent to

the second paragraph of the majority opinion, not only because it is unnecessary to a decision of the point in judgment and hence only an anticipatory ruling, and in my judgment ill advised, but because I think it rests upon invalid reasoning and unsound distinctions between the rights of ownership (after abandonment of an easement) which accrue to a railroad, and to other previous owners and tenants of such abandoned property.

As I understand the settled law of the State and the great weight of authority elsewhere, the intentional abandonment of its easement accompanied by an unequivocal external act which indicates that purpose by a railroad, causes a reverter of the title to the then owners of the servient estate, and the reversion carries the title to the fixtures implanted in the soil which are not seasonably removed, as well as the title to the soil itself. [Boyce v. Mo. Pac. Ry., 168 Mo. l. c. 589; Kellogg v. Malin, 50 Mo. 496; Hunt v. Mo. Pac. Ry., 76 Mo. 115; Railway v. Bradbury, 106 Mo. App. l. c. 457; Tudor Iron Wks. v. Hitt, 49 Mo. App. 472; Hart v. Railway, 7 Mo. App. 446; Van Keuren v. Railroad, 38 N. J. L. 165; St. Louis Radiator Mfg. Co. v. Carroll, 72 Mo. App. 315; Scarritt v. K. C. O. & S. Ry. Co., 148 Mo. 676; McLemore v. Railroad, 111 Tenn. l. c. 657; Railroad v. Geisel, 119 Ind. 77; Railroad v. Frost, 147 Mass. 121; Jones on Easements, sec. 211.]

The short spur track involved in this case had been substituted by other lines for a great many years and was totally abandoned by the defendant for more than five years before this action. This was demonstrated by the growth of trees between the ties which would have prevented the running of any trains, the fencing off of the right of way for cow pastures, and appears by the admissions of defendant in its answer to the suit brought to compel it to operate the road, and by the admissions as to abandonment contained in

the brief of the candid and able attorney for the defendant, which are quoted in the divisional opinion.

Under these and other facts in the record, plaintiffs' right to the rails and other fixtures permanently attached to the soil, was a mere legal conclusion, unless the principles established in the above citations are to be overruled. This, I do not think, should be done and hence dissent to the learned opinion in Banc, in this case.